IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TONY DONNELL GRANDISON, )<br>    Plaintiff    )<br>    )<br>v.    )<br>    )<br>M. STANFORD, et al.,    )<br>    Defendants    ) | Civil Action No.: 7:16cv00189<br><br>**MEMORANDUM OPINION**<br>By: PAMELA MEADE SARGENT<br>United States Magistrate Judge |

The pro se plaintiff, Tony Donnell Grandison, ("Grandison"), an inmate incarcerated at Wallens Ridge State Prison, ("Wallens Ridge"), brings this civil rights action pursuant to 42 U.S.C. § 1983, against the defendants, M. Stanford, Medical Administrator at Wallens Ridge; Dr. McCarthy, Head Contracted Physician at Wallens Ridge; Leslie Fleming, Head Warden at Wallens Ridge; and J.C. Combs, Assistant Warden at Wallens Ridge. In his Complaint, (Docket Item No. 1), Grandison claims that the defendants have been deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights. Specifically, he claims that he suffers from chronic orchialgia,[1] and that the defendants have denied him treatment for this condition.

This matter has been transferred to the undersigned based on the parties' consent pursuant to 28 U.S.C. § 636(c)(2). The matter is before the court on Grandison's motions for preliminary injunctive relief, (Docket Item Nos. 6, 15, 83), Grandison's motions for summary judgment, (Docket Item Nos. 46, 59), and the defendants' motions for summary judgment, (Docket Item Nos. 37, 53). The

---
[1] Orchialgia refers to pain in the testicles. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1187 (27th ed. 1988).

-1-

undersigned previously heard Grandison's first two motions for preliminary injunctive relief, (Docket Item Nos. 6, 15), and issued a Report And Recommendation recommending that preliminary injunctive relief be entered ordering the defendants to provide the prescribed medical treatment for his chronic orchialgia. (Docket Item No. 57.) The defendants objected to this Report And Recommendation. (Docket Item No. 66.) Before the district judge could rule on these objections, the parties consented to jurisdiction before the Magistrate Judge, and the case was transferred to the undersigned. The court heard the pending cross-motions for summary judgment on October 4, 2016. Based on the arguments and representations of Grandison and counsel for the defendants, and the evidence before the court, the court will deny Grandison's requests for preliminary injunctive relief, deny all motions for summary judgment and instruct the Clerk's Office to schedule plaintiff's claims for jury trial.

## I. Facts[2]

Grandison is a Virginia Department of Corrections, ("VDOC"), inmate, who has been housed in segregation at Wallens Ridge since his arrival there on August 14, 2014.[3] At his July 13 hearing on preliminary injunctive relief, Grandison testified that, since 2013, he has suffered from testicular pain, particularly on the left side, for which he was referred to the Medical College of Virginia, ("MCV"), by the institutional physician at Lawrenceville. He testified that, in June 2013, Dr.

---

[2] The court will consider Grandison's oral testimony at his July 13 and October 4, 2016, hearings on, both, his requests for preliminary injunctive relief and the pending summary judgment motions.

[3] Prior to being transferred to Wallens Ridge, Grandison was housed at Keen Mountain Correctional Center, ("Keen Mountain"), and Lawrenceville Correctional Center, ("Lawrenceville").

Calhoun at MCV diagnosed him with chronic orchialgia, for which the doctor recommended the following course of treatment: (1) supportive undergarments; (2) Motrin for pain; and (3) referral to a pain specialist for evaluation of his condition and a possible nerve block. Grandison testified that the medical staff at Lawrenceville, however, never followed any of these recommendations before transferring him to Keen Mountain. Likewise, he testified that the medical staff at Keen Mountain ignored these recommendations. Grandison testified that, once he arrived at Wallens Ridge, Dr. Rose Dulaney, the institutional physician at that time, evaluated him and referred him back to MCV, where he saw Dr. Benjamin Ulep in January 2015. After evaluating Grandison, Dr. Ulep also ordered supportive undergarments and referral for pain management. Thereafter, on February 21, 2015, Grandison saw Regina C. Foster, P.A., a physician's assistant at MCV, for a follow-up appointment. After an ultrasound of Grandison's left testicle failed to pinpoint the source of his pain, Foster recommended supportive undergarments, Motrin and referral to pain management.

Grandison testified that defendant M. Stanford, the Medical Administrator at Wallens Ridge, has advised him that supportive undergarments cannot be provided, as he could use them to choke himself. She further has advised him that Wallens Ridge does not provide pain management services. According to Grandison, he has received no treatment for his chronic orchialgia at Wallens Ridge except for orders for ibuprofen, which does not relieve his testicular pain and causes pain in his right kidney. Despite Grandison's complaints to her that Motrin causes him right kidney pain, Stanford has offered no alternative medication or treatment. Grandison testified that he had requested to be prescribed Mobic, which he had received at Lawrenceville and which had alleviated his pain, but Dr. C. Lard, another institutional physician at Wallens Ridge, advised him in

-3-

Case 7:16-cv-00189-PMS   Document 87   Filed 02/24/17   Page 3 of 20   Pageid#: 1002

February 2016 that there was nothing else he could take. He testified that the medical staff at Wallens Ridge will not explain to him why he cannot be prescribed Mobic. He testified that he also received a jock strap while at Lawrenceville, but it was too small, resulting in pain and discomfort. Although a larger size was ordered, he was transferred to Keen Mountain before he received it. In July 2016, Grandison testified that he had not been provided any type of supportive undergarment at Wallens Ridge. At his October 4, 2016, hearing, Grandison conceded that he had been provided supportive undergarments on September 15, 2016. Counsel for the defendants also notified the court at this hearing that Grandison had been placed on a list to be seen by a pain management specialist. To date, however, the defendants have provided the court with no evidence that Grandison has been seen by such a specialist.

According to Grandison, he has exhausted his administrative remedies on this issue nine times and testified that he believed he is viewed as a nuisance at this point. According to Grandison, he has received 13 request forms back, advising him to take the issue up with the Medical Department. He further stated that he has made both the Assistant Warden and the Warden aware of his situation, but they have failed to take any corrective action. In particular, he testified that he had shown them both request forms in 2015 and 2016, as well as the medical reports from MCV. Both Warden Fleming and Assistant Warden Combs have deemed Grandison's grievances unfounded based on Stanford's statements that he is being treated according to Wallens Ridge physicians' plan of care. In response, however, Grandison contends that VDOC Operating Procedure, ("OP"), 720.1[4] provides for

---

[4] Operating Procedure 720.1, "Access to Health Services," specifically states that "[t]reatment of offenders' health problems will not be limited to resources available within a facility. If a higher level of care is required than can be provided at the assigned facility, the

-4-

transfer to another facility if the offender's current facility cannot manage the health problem at issue.

Grandison testified that, since 2014, he has seen five institutional physicians at Wallens Ridge, all of whom have advised him that the facility does not provide pain management. Grandison testified that he suffered testicular pain on a daily basis with intermittent swelling. At his July hearing, Grandison rated his pain as a 5 to 7 on a 10-point scale. Grandison testified that he saw Nurse Lori Davis the day before the hearing, at which time she said that Stanford had stated that the recommendations of the three outside treatment providers were just that – recommendations, and that the institutional physician controls an inmate's plan of care. He testified that ibuprofen was the most recent medication provided to him.

The parties also have provided numerous of Grandison's medical records to the court, including a VDOC Consultation Report, dated June 19, 2013, while he was housed at Lawrenceville, which indicates that Dr. Calhoun referred him to the Urology Department at Virginia Commonwealth University, ("VCU"), for left testicular pain for four months without improvement on doxycycline, Cipro and NSAIDS. (Plaintiff's Exhibit No. 2, Docket Item No. 34-2.) It further noted that an ultrasound was negative. The consulting physicians at VCU, Drs. Orton and Habibi, diagnosed chronic orchialgia and recommended ibuprofen (600 mg as needed for pain); scrotal support at all times; and referral to a pain specialist for a possible nerve block. In a Pre-Registration Request Form, dated May 12, 2014, while Grandison was housed at Keen Mountain, an appointment was requested for a new patient evaluation for pain management for chronic orchialgia, for which a

---

offender should be moved to an appropriate facility or provided community services if necessary." (Docket Item No. 42-1 at 72.)

Case 7:16-cv-00189-PMS   Document 87   Filed 02/24/17   Page 5 of 20   Pageid#: 1004

referral to a pain specialist for a possible nerve block in the left testicle was recommended. (Docket Item No. 42-1 at 15.) There is a handwritten note attached to this form, stating as follows: "At WRSP. We do have a pain [management] clinic, but they do not see our [patients] here. Sorry for the inconvenience. Please refer elsewhere." In an undated VDOC Specialty Service/Consultation Request, completed while Grandison was at Wallens Ridge, it is noted by Dr. Benjamin T. Ulep, M.D., that the Urology Department at MCV had recommended conservative measures and pain management, as well as a possible nerve block. (Plaintiff's Exhibit No. 3, Docket Item No. 34-3.) Dr. Ulep noted that Grandison was referred back to the urologist, who he saw on January 21, 2015.

     Grandison also has provided the treatment note from this January 21, 2015, visit to the Urology Department at MCV, at which time he saw physician's assistant Regina C. Foster. (Plaintiff's Exhibit No. 4, Docket Item No. 34-4.) She noted that the department had been following Grandison for almost two years for his chronic left testicular pain. Grandison reported being prescribed Mobic, which he did not feel was helping, and the facility provided a jock strap, but it was too small, making matters worse. He reported experiencing daily pain, ranging from 5 to 8 on a 10-point scale. Foster stated that, because Grandison's pain had persisted, she would order a repeat ultrasound. However, she informed him that there was not a lot more they could do for him since they could not find a cause for his pain. Grandison stated that he would try to obtain a larger jock strap. Foster recommended that, when his symptoms were unbearable, he could take ibuprofen, and he was to follow up with her once the ultrasound was completed. Foster stated that if they still could not find a cause for Grandison's pain, they again would recommend the facility refer him to a pain specialist for evaluation and a possible nerve block.

Grandison also has submitted into evidence a treatment note from February 18, 2015, from physician's assistant Foster. (Docket Item No. 42-1 at 16.) Foster noted that a scrotal ultrasound from February 5, 2015, had failed to reveal any abnormalities. She noted Grandison's chronic orchialgia diagnosis and stated that a cause could not be determined. Therefore, she indicated that she had advised the facility to get him in with a pain management specialist.

Grandison also has provided sworn affidavits, stating that, in early March, 2016,[5] he spoke with Dr. McCarthy regarding treatment by a pain management specialist, but Dr. McCarthy said he would not get that type of treatment because "Wallens Ridge just doesn't provide that kind of treatment." (Docket Item No. 42-1 at 37.) Grandison has stated that he also requested referral to a pain specialist when he saw Dr. McCarthy on April 15, 2016. On this occasion, Grandison said that Dr. McCarthy told him Wallens Ridge "does not provide a pain specialist." (Docket Item No. 60 at 5.)

Grandison has stated that he had written several request forms and shown Warden Fleming documents regarding this issue, but he failed to respond. (Docket Item No. 42-1 at 37.) Grandison stated that he spoke with Assistant Warden Combs, showed him documents and wrote him multiple request forms pleading for his help to get proper treatment. (Docket Item No. 42-1 at 37.) However, Grandison said, they both have refused to thoroughly investigate these issues. (Docket Item No. 42-1 at 37.) Grandison also has submitted three Offender Request forms, directed to Assistant Warden Combs. These Offender Request forms are dated February 28, March 2, and March 3, 2016. In the first one,

---

[5] One affidavit stated that this conversation occurred on March 4, 2016, and another stated that it occurred on March 7, 2016.

Grandison stated that Combs needed to do something about seeing that he got adequate medical treatment. (Docket Item No. 42-1 at 45.) Grandison further noted that he had shown Combs documentary evidence of his medical condition and the recommended course of treatment, but claimed that Combs failed to correct the Medical Department's failure to treat him. Assistant Warden Combs's response was only to ask Grandison where he was provided treatment. In the March 2, 2016, Offender Request form, Grandison again stated his need for adequate medical treatment, which he could not obtain at Wallens Ridge. (Docket Item No. 42-1 at 46.) He requested a transfer to an appropriate facility as contemplated by OP 720.1. In his response, Assistant Warden Combs simply stated that he was not a medical expert and asked Grandison to address this issue with the Medical Department. The following day, on March 3, 2016, Grandison submitted another Offender Request form to Combs. (Docket Item No. 42-1 at 47.) Grandison acknowledged that Combs was not a medical expert, but alleged that, in his position, he is in charge of all employees at Wallens Ridge's administration and responsible for the welfare of the inmates. He further alleged that Combs had failed to take any initiative to investigate any of his issues even after he showed him documentary evidence of what the last off-site medical provider recommended as a treatment plan. Lastly, Grandison alleged that Combs was over the nursing staff and could make them properly carry out their jobs. Combs, again, simply stated that he is not a medical expert.

Grandison also has submitted an Offender Request form, dated August 3, 2015, on which he noted continued testicular pain. (Docket Item No. 42-1 at 40.) Defendant Stanford responded that this testicular pain was something he had experienced for years. In a February 20, 2016, Offender Request form, Grandison requested sick call for supportive undergarments, among other things. (Docket

-8-

Case 7:16-cv-00189-PMS   Document 87   Filed 02/24/17   Page 8 of 20   Pageid#: 1007

Item No. 42-1 at 44.) Stanford responded that he was scheduled for sick call. In a May 11, 2016, Offender Request form, Grandison requested sick call for multiple issues, including supportive undergarments, pain medication and referral to a pain management specialist, as prescribed by outside physicians. (Docket Item No. 42-1 at 49.) Stanford again responded that he was scheduled for sick call.

In an Informal Complaint, dated September 25, 2014, Grandison complained of continued testicular pain, sometimes unbearable, and swelling, noting that the outside treatment providers' recommendations had not yet been followed, and he requested a second medical opinion. (Docket Item No. 42-1 at 51.) Stanford responded that, after reviewing his medical record, she determined that Grandison was advised to wear supportive undergarments, and Mobic was ordered for pain. She further noted that he had been seen by the Medical Department at his previous institution, by Dr. Dulaney at Wallens Ridge and by a urologist at MCV. Stanford advised Grandison that the institutional physician would determine the need for an off-site consultation. In another Informal Complaint, dated January 18, 2016, Grandison stated that he saw Dr. Dulaney that day for his chronic orchialgia. (Docket Item No. 42-1 at 53.) When he asked her about pain management, she said "We discussed this many times before Mr. Grandison. That kind of treatment is not available here [at] Wallens Ridge." Grandison further stated that he had requested supportive undergarments and pain medications. Stanford responded that Dr. Dulaney was aware of Grandison's chronic pain and "we" also are aware of the urology visit from last year, after which the recommendations were made to provide ibuprofen when the symptoms become unbearable. Stanford stated that Dr. Dulaney would review Grandison's chart. Thereafter, on January 27, 2016, Grandison filed a Regular Grievance, noting that Stanford had responded in the Informal Complaint only to the recommendation that he be provided ibuprofen for

pain, not to the recommendation that he be given supportive undergarments or that he be referred to a pain management specialist. (Docket Item No. 42-1 at 54.) Although Grandison appealed to both Level I and Level II, both were deemed unfounded, based on Stanford's statements. On May 30, 2016, Grandison submitted another Informal Complaint to Stanford, requesting the reasons for not providing, or interfering with, his course of medical treatment, as ordered by three outside treatment providers for his chronic orchialgia. (Docket Item No. 42-1 at 62.) He alleged that Stanford refused to provide supportive undergarments, to renew prescriptions for pain relievers and to provide a pain specialist. Stanford responded that the plan of care is determined by the institutional doctor, who takes into consideration the recommendations of off-site consultants.

By declaration, Dr. McCarthy has stated that he has provided medical care for VDOC inmates since April 2015. (Docket Item No. 52-1.) Dr. McCarthy has stated that it is "a standard practice in the medical field to review and rely on the medical records and reports of other healthcare providers when rendering treatment, making recommendations and issuing orders." Dr. McCarthy admitted that he had reviewed Grandison's medical records on March 4, 2016, prior to seeing Grandison. He has conceded that Grandison's medical records showed that the specialists in the Urology Department at MCV have recommended that Grandison receive ibuprofen, wear scrotal support and be referred to a pain specialist to be considered for a possible nerve block for his chronic orchialgia. Dr. McCarthy's also stated in his declaration that "[a] recommendation from a healthcare provider is not the same as an order for treatment or a prescription for medication." He further stated that "[a] recommendation for pain management at a supermax prison differs greatly from a recommendation for pain management for non-imprisoned patients," but he did not specify how or why it "differs greatly."

-10-

Case 7:16-cv-00189-PMS   Document 87   Filed 02/24/17   Page 10 of 20   Pageid#: 1009

Dr. McCarthy stated that, in his medical opinion, it was reasonable and appropriate to treat Grandison's chronic orchialgia with ibuprofen and it was not medically necessary for Grandison to receive pain management, a nerve block or supportive garments. By supplemental declaration, Dr. McCarthy has stated that he has not provided medical care to Wallens Ridge inmates since June 10, 2016. (Docket Item No. 70-2.)

By affidavit, Fleming has admitted that, as Warden of Wallens Ridge, he is responsible for the day-to-day operations of the prison. (Docket Item No. 38-1.) Nonetheless, Fleming stated that he had no responsibility or supervision over the actual administration of medical services provided by the healthcare providers at Wallens Ridge. Fleming stated:

> The Commonwealth of Virginia provides trained medical professionals to provide offenders quality medical care at correctional facilities. If any offender has a medical problem, he may seek treatment at his assigned facility. All offenders at [Wallens Ridge] have access to medical care services by trained professionals with expertise in their fields of practice. If an offender has a medical problem or concern, he may seek appropriate attention and care from the health care provider at this institution. The health care providers evaluate the offender's complaint and determine what treatment, if any, is necessary.

Fleming further stated:

> I am not a medical doctor and I am not qualified to make medical decisions regarding the diagnosis or treatment of an offender's medical needs. …
> … I rely on the professional judgment of doctors, nurses, and other health care providers and do not substitute my own judgment for the health care providers' professional opinions concerning an offender's condition or treatment. I have no reason to believe that

-11-

Grandison's alleged medical needs have not been appropriately addressed by health care providers….

Combs, by affidavit, (Docket Item No. 38-2), has stated:

> …Offender Grandison has submitted several Informal Complaints and at least two Regular Grievances regarding the issue raised in this lawsuit. Upon investigation of his complaints, it was determined that medical staff was fully aware of his condition and complaints of chronic pain, and that Grandison was being provided medication for his complaints. M. Stanford … reviewed offender Grandison's medical record and advised that the institutional physician was providing ibuprofen when needed, as recommended by a urologist at [MCV]. She also advised that, while the institutional physician at [Wallens Ridge] takes into consideration the recommendations provided by outside consultants, it is the institutional physician who is ultimately responsible for determining and prescribing the appropriate treatment plan for offenders….

Combs also stated that, if medical staff at Wallens Ridge determined that an inmate needed special undergarments, they would be provided by the prison.

By affidavit, (Docket Item No. 38-3), Stanford has stated that she has "ensured that Grandison is receiving prompt and appropriate medical treatment as prescribed by the institutional physician. … I have never ignored offender Grandison's requests for medical attention or prevented him from seeking medical treatment." The medical records attached to her affidavit, however, confirm that the only treatment Grandison received for his pain was ibuprofen. A January 29, 2016, medical record signed by Stanford, herself, states that Grandison asked her about receiving pain management and nerve block, and she "advised the physician is providing pain management as recommended by … urologist." (Docket Item

-12-

No. 38-3 at 11.) A June 3, 2016, record shows that Grandison was not allowed to have supportive briefs with elastic "due to concern over self-harm." (Docket Item No. 38-3 at 4.) Another medical report, dated May 22, 2016, recognized that it had been recommended for Grandison to wear supportive briefs, but the record stated that support briefs were "not available at this facility." (Docket Item No. 38-3 at 6.) A Health Services Consultation Report, signed by PA Foster on February 18, 2015, stated "needs chronic pain management." (Docket Item No. 38-3 at 36.) Another one of these forms, signed by Foster on January 21, 2015, also recommended pain management. (Docket Item No. 38-3 at 43.)

In response to Grandison's most recent request for preliminary injunctive relief, a Second Supplemental Affidavit from Stanford has been filed. (Docket Item No. 85-1.) According to Stanford, Grandison was seen by a prison physician regarding his testicular pain on August 3, 2016. She said that Grandison did not request any additional treatment for testicular pain, despite seeing a physician for other complaints, until February 7, 2017. On this date, Grandison was provided Motrin for complaints of testicular pain.

Stanford also stated that she had attempted to arrange for Grandison to be seen by a pain management specialist in Abingdon, but the specialist had declined to see Grandison, advising that he had nothing to offer Grandison after reviewing his medical records. Stanford stated that she has forwarded Grandison's medical records to another pain management clinic in Roanoke and is awaiting an appointment for Grandison to be seen.

-13-

Case 7:16-cv-00189-PMS   Document 87   Filed 02/24/17   Page 13 of 20   Pageid#: 1012

*II. Analysis*

Grandison claims that the defendants have violated his Eighth Amendment right against cruel and unusual punishment by being deliberately indifferent to his serious medical needs. The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). This includes a requirement that a state provide medical care to those it punishes by incarceration. *See Estelle v. Gamble,* 429 U.S. 97, 103 (1976); *Chapman v. Rhodes*, 434 F. Supp. 1007, 1020 (S.D. Ohio 1977), *aff'd,* 624 F.2d 1099 (6th Cir. 1980), *rev'd on other grounds*, 452 U.S. 337, 344 (1981); *Stokes v. Hurdle*, 393 F. Supp. 757, 761 (D. Md. 1975), *aff'd,* 535 F.2d 1250 (4th Cir. 1976.) For a prisoner or a pretrial detainee to state a constitutional claim for denial of medical care, he must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle,* 429 U.S. at 106. In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn,* 896 F.2d 848, 851 (4th Cir.1990) (citation omitted).

"Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Miltier,* 896 F.2d at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837. Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See*

*Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir.1998). In order to state a plausible claim for deliberate indifference to a serious medical need, the plaintiff must allege that a defendant deliberately denied, delayed or interfered with his medical care with knowledge of his condition. *See Smith v. Smith*, 589 F.3d 736, 738-39 (4th Cir. 2009); *Newbrough v. Piedmont Reg'l Jail Auth.*, 822 F. Supp. 2d 558, 577 (E.D. Va. 2011). The Fourth Circuit has held that "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" amounts to deliberate indifference. *Smith*, 589 F.3d at 738-39. Moreover, the Fourth Circuit has held that a medical official's failure to follow up on a prescribed course of treatment presents a plausible claim of deliberate indifference. *See Miltier*, 896 F.2d at 853 (denying the defendant's motion for summary judgment where a jail's chief doctor, after approving a recommendation for referral to a hospital, "did nothing to follow up" despite the inmate's "continued complaints."). When nonmedical, supervisory personnel are defendants, the deliberate indifference standard is even more difficult to satisfy. Under such circumstances, a plaintiff must show one of three things to trigger § 1983 liability: (1) that the supervisory defendant was personally involved with the denial of treatment; (2) that the supervisory defendant deliberately interfered with the prison doctor's performance; *see Gamble v. Estelle*, 554 F.2d 653, 654 (5th Cir. 1977), or (3) that the supervisory defendant tacitly authorized or was indifferent to the prison physician's constitutional violation. *See Miltier*, 896 F.2d at 854; *Slakan v. Porter*, 737 F.2d 368, 372-73 (4th Cir. 1984).

The court will address the parties' cross-motions for summary judgment first. Grandison's motions claim that there is no genuine dispute of material fact and that he is entitled to judgment on the issue of liability as a matter of law. The defendants' motions all agree that there is no genuine dispute of material fact, but

the defendants claim that they are entitled to judgment as a matter of law on the undisputed facts. Based on my finding that there are material facts in dispute, I will deny all motions for summary judgment.

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996). When a motion for summary judgment is made and is properly supported by affidavits, depositions or answers to interrogatories, the nonmoving party may not rest on the mere allegations or denials of the pleadings. *See Oliver v. Va. Dep't of Corrs.*, 2010 WL 1417833, at *2 (W.D. Va. Apr. 6, 2010) (citing FED. R. CIV. P. 56(e)). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. *See Anderson*, 477 U.S. at 256-57.

-16-

Case 7:16-cv-00189-PMS   Document 87   Filed 02/24/17   Page 16 of 20   Pageid#: 1015

Grandison has produced evidence that he suffers from a serious medical condition -- chronic orchialgia. A medical need is objectively serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (internal quotations omitted)). Chronic pain can constitute a serious medical need. *See Mata v. Saiz*, 427 F.3d 745, 754-55 (10th Cir. 2005) (severe, long-term pain that required treatment constitutes a serious medical need); *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (A serious medical need includes: (1) when the failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain; and (2) the existence of chronic and substantial pain); *Hathaway v. Coughlin*, 37 F.3d 63, 64-65 (2d Cir. 1994) (A serious medical need includes the failure to remove broken hip pins from prisoner's hips for over three years despite prisoner's complaints of persistent pain). Here, Grandison has produced evidence that his condition was diagnosed by a medical doctor in 2013, and two physicians and a physician's assistant have found that multi-faceted treatment is necessary to reduce or eliminate his pain. Thus, I find that he has produced evidence from which a jury could find the existence of a serious medical need.

Grandison also has produced evidence from which a jury could decide that the defendants were deliberately indifferent to his serious medical need. With regard to Stanford and Dr. McCarthy, Grandison has presented evidence that they had actual knowledge of his serious medical condition. Grandison has presented evidence in the form of Offender Request forms, Informal Complaints and Grievances, showing that Stanford had actual knowledge of his serious medical condition. These forms reflect that Stanford knew he had experienced testicular

pain "for years," that he was requesting to be provided the specific medical treatment as recommended by the outside medical providers and that he had requested another medical opinion. However, Stanford's responses were that he was scheduled for sick call, that the physician at Wallens Ridge would determine his plan of care and that pain management services are not available at Wallens Ridge. Grandison also has produced evidence that his requests and complaints were disregarded by Stanford, who either did not directly address the concerns voiced by Grandison, only partially addressed his concerns or simply stated that the institutional physician was not obligated to follow the recommended medical treatment.

With regard to Dr. McCarthy, Grandison has presented evidence that, on March 7, 2016, he spoke with Dr. McCarthy about seeing a pain management specialist for a possible nerve block, as prescribed by the off-site medical providers, but Dr. McCarthy advised him that he would not get that kind of treatment at Wallens Ridge "because Wallens Ridge just doesn't provide that kind of treatment." (Docket Item No. 42-1 at 37.) This statement by Dr. McCarthy creates a genuine dispute as to whether the recommended treatment simply was not being provided as a matter of policy, regardless of Grandison's need.

As for the nonmedical personnel defendants, Warden Fleming and Assistant Warden Combs, Grandison has presented evidence from which a jury could find that they, too, were deliberately indifferent to his serious medical need. For instance, Grandison has presented evidence, in which he states that he wrote several Offender Request forms to Warden Fleming and showed him documentation of his condition and denial of any treatment, but he failed to respond. With regard to Assistant Warden Combs, Grandison has presented

-18-

Case 7:16-cv-00189-PMS   Document 87   Filed 02/24/17   Page 18 of 20   Pageid#: 1017

affidavit evidence, stating that he spoke with and showed Combs documentation and wrote him multiple Offender Request forms pleading for his help to be treated. Grandison also provided three Offender Request forms, directed to Assistant Warden Combs, which include Grandison's complaints of not receiving the recommended treatment for his chronic orchialgia and his requests that the same be provided. However, Combs merely responded that he was not a medical expert. When Grandison acknowledged that Combs was not a medical expert, but claimed he was responsible for the inmates' welfare and had failed to investigate his issues, Combs again simply stated that he was not a medical expert. Based on this, I find that Grandison has presented sufficient evidence to sustain claims for deliberate indifference to his serious medical needs against defendants Fleming and Combs. More specifically, he has presented evidence from which a jury could find that they tacitly authorized or were indifferent to the prison physician's constitutional violation in refusing to offer treatment. *See Miltier*, 896 F.2d at 854; *Slakan*, 737 F.2d at 372-73.

The court, next, turns its attention to whether it should impose preliminary injunctive relief. A plaintiff seeking preliminary relief is required to demonstrate that he is likely to succeed on the merits of his claim, that he is likely to suffer irreparable injury in the absence of an injunction, that the balance of equities tips in his favor and that injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary remedy, never awarded as of right. *See Winter*, 555 U.S. at 24. The plaintiff bears the burden of establishing that the court should grant a preliminary injunction. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) (citing *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)).

With regard to his request for injunctive relief, I find that is no longer appropriate. In particular, Grandison has testified that he has been provided supportive garments. Also, based on the conflicting medical evidence before the court, the court can no longer find that Grandison is likely to succeed on the merits. Unlike before, there is now medical evidence before the court stating that Grandison's medical condition did not require evaluation and treatment by a pain management specialist. There also is evidence before the court that Stanford is attempting to arrange an evaluation of Grandison's condition by a pain management specialist. That being the case, the court will deny preliminary injunctive relief.

The court will enter an appropriate order.

**ENTERED:** February 24, 2017.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE